# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| KENNIN JACKSON, : | |
|     *Plaintiff*, : | |
| : | CASE NO. |
| v. : | 3:19-cv-1057 (VAB) |
| : | |
| CORRECTION OFFICER MOOCHIE, et al., : | |
|     *Defendants.* : | |

## INITIAL REVIEW ORDER AND RULING ON MOTION

Kennin Jackson ("Plaintiff"), *pro se* and currently incarcerated at the Northern Correctional Institution ("Northern") in Somers, Connecticut, has filed a Complaint under 42 U.S.C. § 1983 against twelve Department of Correction ("DOC") officials in their individual and official capacities: Correctional Officers Moochie, Wells, Sanchez, Piscottano, Pagan, Sandone, Mills, and Moses, Correctional Counselor Blue, Deputy Warden Bradway, Captain Cavanaugh, and Warden Mudano (collectively, the "Defendants"). Compl., ECF No. 1 (July 5, 2019).

Mr. Jackson seeks monetary, injunctive, and declaratory relief against these defendants for violating his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. *See id.* at ¶¶ 31-39. On August 15, 2019, Magistrate Judge William I. Garfinkel granted Mr. Conley's motion to proceed *in forma pauperis*. *See* Order, ECF No. 12 (Aug. 15, 2019).

Mr. Jackson has also moved for the Court to issue a temporary restraining order and an order to show cause why a preliminary injunction should not issue against Defendants. Mot. for Order to Show Cause, ECF No. 13 (Nov. 21, 2019).

For the following reasons, the Complaint is **DISMISSED** in part, and the motion for a temporary restraining order and an order to show cause is **DENIED**.

## I. FACTUAL ALLEGATIONS

On May 18, 2019, Officers Sandone, Mills, and Moochie[1] allegedly told Mr. Jackson that he was a pedophile and a rapist. Compl. ¶ 17. Officers Sandone and Moochie allegedly said that they were going to "set [him] up [and] keep him in jail by lying on official documents." *Id.* Officer Mills thereafter allegedly "lied on an official document."[2] *Id.* Officer Sandone also allegedly "falsified official documents." *Id.* at ¶ 18.

On June 27, 2019, Officer Moochie allegedly was serving dinner on the lower level of the 2-West housing unit and tampered with Mr. Jackson's meal tray by removing his chicken patty. Compl. ¶ 19. Officer Wells, who was also allegedly present, allegedly called Mr. Jackson "a fucking rapist bitch" and told him, "That's what you fucking get!" *Id.* Officer Pagan also allegedly called Mr. Jackson a rapist. *Id.* at ¶ 28. Mr. Jackson allegedly wrote to Warden Mudano, Deputy Warden Bradway, and Captain Cavanaugh about threats Officer Moochie was making against him, but "nothing was done about it." *Id.* at ¶ 20. Mr. Jackson alleges that he was never accused or convicted of rape or sexual assault in any jurisdiction. *Id.* at ¶ 28.

On July 1, 2019, Officer Moses allegedly "falsified an official document [under] the influence" of Officer Moochie, Warden Mudano, and Captain Cavanaugh. Compl. ¶ 22. Two days later, Officer Wells allegedly "retaliate[d]" against Mr. Jackson by refusing to collect the trash from his cell and calling him a rapist. *Id.* at ¶¶ 23-24. Officer Wells allegedly said to Mr. Jackson, "Fuck you! Live in your nasty rapist cell where you belong!" *Id.* at ¶ 24. Later, Officer Moochie allegedly "falsified an official document." *Id.* That same day, Counselor Blue allegedly

---

[1] The Defendants' first names are not included in the Complaint.
[2] Mr. Jackson references "Exhibits" in support of his allegations; *see* Compl. ¶¶ 18, 22, 24-25. Although he does not attach any exhibits to the Complaint, he does attach those complaints to his Motion for an Order to Show Cause. Mot. for Order to Show Cause.

called Mr. Jackson a rapist and said, "[Y]ou'r[e] going to get your request when I feel like giving it to you." *Id.* at ¶ 27.

On July 4, 2019, Officer Sanchez allegedly came to Mr. Jackson's cell to permit him to shower. Compl. ¶ 25. When Mr. Jackson left his cell to go to the shower, Officer Moochie allegedly told Officer Sanchez that he was a rapist and instructed him to "fuck his cell up!" *Id.* Officer Sanchez allegedly hen entered Mr. Jackson's cell and "trashed it" by throwing his personal property all over the floor. *Id.* Officer Sanchez also allegedly called Mr. Jackson a rapist and "falsified an official document." *Id.* at ¶¶ 25-26. Later, Officer Piscottano allegedly gave Mr. Jackson a disciplinary ticket and said, "[H]ere you go you fucking rapist." *Id.* at ¶ 26.

As a result of the Defendants' alleged behavior towards him, Mr. Jackson allegedly fears for his safety and well-being at Northern. Compl. ¶ 30.

## II. STANDARD OF REVIEW

A court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A plaintiff therefor must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they

3

suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

### III. DISCUSSION

Mr. Jackson is suing the defendants in their individual and official capacities under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments for retaliating against him for complaining about staff behavior to Warden Mudano, Deputy Warden Bradway, and Captain Cavanaugh; "falsifying official documents;" "trash[ing]" his cell on July 4, 2019; "defam[ing] [his] character;" and subjecting him to cruel and unusual punishment. *See* Compl. ¶¶ 36-39.

The Court will permit an Eighth Amendment claim to proceed against Defendant Officers Moochie and Wells in their individual capacities but dismiss all other claims.

#### A. The First Amendment Retaliation Claim

Mr. Jackson is suing Defendant Officers Moses, Moochie, Pagan, Piscottano, Mills, Wells, Sanchez, and Sandone; and Counselor Blue; "for violation of 1st [Amendment] Defamation of Character." Compl. ¶ 39. Throughout his Complaint, however, Mr. Jackson alleges that several of the defendants "retaliate[d]" against him after he complained to Mudano, Cavanaugh, and Bradway that Moochie had been threatening him. *See id.* at ¶¶ 20-21. Thus, the Court construes Mr. Jackson's First Amendment claim as one of retaliation for exercising free speech. *See Sykes*, 723 F.3d at 403 ("*Pro se* complaints must be construed liberally and interpreted to raise the strongest arguments that they suggest." (internal alterations, citations, and quotation marks omitted)).

4

"Prison officials may not retaliate against inmates for exercising their constitutional rights." *Riddick v. Arnone*, No. 3:11-cv-631 (SRU), 2012 WL 2716355, at *6 (D. Conn. July 9, 2012). "To prevail on a First Amendment retaliation claim, an inmate must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against [him], and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225-226 (2d Cir. 2014) (affirming a district court judgment finding that prison officials did not retaliate against the plaintiff when they disciplined him for declining to provide a urine sample based on his religious observance) (internal quotation marks omitted); *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (finding that "the passage of only six months between the dismissal of Espinal's lawsuit and an allegedly retaliatory beating by officers, one of whom . . . was a defendant in the prior lawsuit, is sufficient to support an inference of a causal connection").

"In the prison context, 'adverse action' is objectively defined as conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *O'Diah v. Cully*, No. 08-CIV-941 (TJM/CFH), 2013 WL 1914434, at *9 (N.D.N.Y. May 8, 2013) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)); *see also Ramsey v. Goord*, 661 F. Supp. 2d 370, 399 (W.D.N.Y. 2009) (prisoners may be required to tolerate more than average citizens before alleged retaliatory action against them is considered adverse). In order to allege causation, the inmate must state facts "suggesting that the protected conduct was a substantial or motivating factor in the [defendant's] decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)).

"Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient." *Riddick*, 2012 WL 2716355, at *6; *see also Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act"), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). "Accordingly, plaintiffs in retaliatory motive cases must plead 'specific and detailed factual allegations which amount to a persuasive case' or 'facts giving rise to a colorable suspicion of retaliation.'" *Moore*, 92 F. Supp. 3d at 120 (quoting *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001)).

To the extent that any of the Defendants allegedly retaliated against him for writing a complaint to Warden Mudano, Deputy Warden Bradway, and Captain Cavanaugh about Officer Moochie's behavior, Mr. Jackson's claim is conclusory and unsupported by the facts. He has not sufficiently alleged that any of the actions taken against him were causally connected to the written complaint. While Mr. Jackson allegedly wrote to Warden Mudano, Deputy Warden Bradway, and Captain Cavanaugh about Officer Moochie's behavior, there are no facts suggesting that any other Defendant was aware of the complaint. None of the alleged facts support an inference that the Defendants who allegedly manipulated his food, destroyed his personal property, or issued a disciplinary ticket knew about the complaint at all.

The only allegedly retaliatory action involving Warden Mudano, Deputy Warden Bradway, and Captain Cavanaugh—that they "influenced" Officer Moses to "falsif[y] an official document," Compl. ¶ 22—is conclusory and devoid of any facts that could suggest such

6

influence. *Riddick*, 2012 WL 2716355, at *6 ("Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient.").There are no facts alleged which could raise an inference that any of the adverse actions which he allegedly suffered were causally connected to his alleged complaint to Warden Mudano, Deputy Warden Bradway, and Captain Cavanaugh about Officer Moochie's behavior.

Furthermore, to the extent his claim is based on the Defendants' allegedly repeated use of the word "rapist" to refer to him, this kind of insulting and disrespectful language is insufficient to constitute adverse action for purposes of a retaliation claim. *See Dean v. Lantz*, No. 3:08-cv-749 (DJS), 2009 WL 2151173, at *8 (D. Conn. July 17, 2009) ("[I]nsulting language or disrespectful comments directed at an inmate are not sufficient to state a claim for retaliation." (citing *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir.2003)).

Accordingly, Mr. Jackson's First Amendment retaliation claim is **DISMISSED** without prejudice.

### B. The Fourth Amendment Claim

Mr. Jackson is suing Officer Sanchez for violating his Fourth Amendment protection against unreasonable searches and seizures by "trash[ing]" his prison cell on July 4, 2019. *See* Compl. ¶¶ 25, 37. However, "[t]he Supreme Court has held that 'the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell,' and therefore cannot state a claim under § 1983, even if the search was intended simply to harass the inmate." *Griffin v. Komenecky*, No. 95-cv-796 (FJS) (DNH), 1997 WL 204313, at *2 (N.D.N.Y. Apr. 14, 1997) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526, 529-30 (1984)); *see*

7

*also Nieves v. Booker*, No. 05-cv-00017S (Sr), 2013 WL 4604028, at *1-2 (W.D.N.Y. Aug. 28, 2013) (granting summary judgment for defendants on former inmate's Fourth Amendment claim regarding search of personal information). To the extent Mr. Jackson intends to sue Sanchez for the loss of any personal property, such claims must first be presented in state court. *See Jackson v. Dzurenda*, No. 3:11-cv-1668 (RNC), 2012 WL 5448330, at *1 (D. Conn. Nov. 7, 2012); Conn. Gen. Stat. § 4-141.

Accordingly, the Fourth Amendment claim against Sanchez is **DISMISSED** with prejudice.

### C. Due Process Claims

Mr. Jackson is suing Defendant Officers Sandone, Wells, Mills, Moses, and Moochie for violating his right to due process under the Fifth and Fourteenth Amendments by "falsifying official documents." Compl. ¶ 38. Such a claim cannot proceed.

The Fifth Amendment to the United States Constitution applies to the federal government, not to the states. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466-67 (S.D.N.Y. 2009). Mr. Jackson is not suing any federal government officials in this case.

Accordingly, his Fifth Amendment claim is **DISMISSED** with prejudice.

To the extent Mr. Jackson is claiming that the Defendants violated his Fourteenth Amendment right to due process by "falsifying documents," as noted above, his claim is entirely conclusory. *See Mahotep v. DeLuca*, 3 F. Supp. 2d 385, 389 n.3 (W.D.N.Y. 1998) (dismissing inmate's claim that director of inmate grievance program violated due process by "lying and forging documents"). The Complaint is devoid of any facts explaining the nature of the "official

8

documents," which Mr. Jackson alleges were falsified, or how they violated his right to procedural due process under the Fourteenth Amendment.

Mr. Jackson alleges that he received a "ticket" from Officer Piscottano after Officer Sanchez searched his cell. Compl. ¶ 26. To the extent Mr. Jackson is attempting to state a procedural due process claim as a result of a disciplinary proceeding, he must allege facts showing that he was deprived of a liberty interest, which in the prison context, must amount to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

Additionally, he must allege a deprivation of adequate procedural safeguards, which in the prison context, include (1) written notice of the charges; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of the defense, subject to the correctional institution's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense. *See Wolff v. McDonnell*, 418 U.S. 539, 564–69 (1974).

Because Mr. Jackson has not alleged any facts showing either that he was subjected to an "atypical and significant hardship" or that he was deprived of certain procedural rights, his Fourteenth Amendment due process claim is **DISMISSED** without prejudice.

Mr. Jackson's allegations that many of the Defendants called him a rapist and/or a pedophile may give rise to a due process claim under *Vega v. Lantz*, 596 F.3d 77 (2d Cir. 2010). In *Vega*, the Second Circuit held that the improper classification of an inmate as a sex offender

may have a stigmatizing effect which implicates a liberty interest for purposes of due process. 596 F.3d at 81-82. There, an inmate claimed that prison officials wrongfully assigned him a level-3 sexual treatment needs score even though he had not been convicted of a sexual offense. *Id.* The Second Circuit considered Vega's claim as one of defamation but held that, although typically a state-law claim, defamation may, under certain circumstances, rise to constitutional dimension. *Id.* at 81.

In order to state a due process violation, the inmate must "demonstrate 'a stigmatizing statement plus a deprivation of a tangible interest.'" *Vega*, 596 F.3d at 81 (quoting *Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005)); *see also Moore v. Chapdelaine*, No. 3:15-cv-775 (VAB), 2018 WL 638995, at *6 (D. Conn. Jan. 31, 2018). "There are two components of a 'stigma plus' claim. First, the plaintiff must establish the 'stigma' by demonstrating 'the utterance of a statement sufficiently derogatory to injure his or her reputation that is capable of being proved false, and that he or she claims is false.'" *Moore*, 2018 WL 638995, at *6 (quoting *Vega*, 596 F.3d at 81). "Second, the plaintiff must demonstrate the 'plus,' 'a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'" *Id.* (quoting *Vega*, 596 F.3d at 81). "The 'plus' must be something 'in addition to the stigmatizing statement.'" *Id.* (quoting *Vega*, 596 F.3d at 81). "'[D]eleterious effects [flowing] directly from a sullied reputation,' standing alone, are insufficient to satisfy the constitutional standard. *Id.* (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)).

Although Mr. Jackson has alleged that several of the Defendants hurled insults at him and called him a rapist, he has not alleged any facts showing that he was subjected to an additional, state-imposed burden as a result of these insulting statements. He has not alleged that he was

placed in sex offender treatment or subjected to any other prison conditions in connection with these verbal attacks. Because the statements, alone, cannot satisfy a due process claim under *Vega*, Mr. Jackson's Fourteenth Amendment due process claim in this context is **DISMISSED** without prejudice.

D.  **Eighth Amendment**

Finally, Mr. Jackson claims that all Defendants subjected him to cruel and unusual punishment under the Eighth Amendment. Compl. ¶ 36. He does not specify how any of the alleged conduct constituted cruel and unusual punishment.

"A prison official violates the Eighth Amendment's protection against cruel and unusual punishment when the official's action involves the 'unnecessary and wanton infliction of pain.'" *Green v. Martin*, 224 F. Supp. 3d 154, 168 (D. Conn. 2016) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The official cannot "deprive [the] inmate[] of [his] 'basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety.'" *Alster v. Goord*, 745 F. Supp. 2d 317, 335 (S.D.N.Y. 2010) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). To state an Eighth Amendment claim, an incarcerated person "'must show (1) a deprivation that is objectively, sufficiently serious . . . and (2) a sufficiently culpable state of mind on the part of the defendant official,'" i.e. that the official acted with deliberate indifference to the health or safety of the incarcerated individual. *Green*, 224 F. Supp. 3d at 168 (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)); *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002). The alleged deprivation "must be examined in light of contemporary standards of decency to determine whether they are sufficiently serious." *Green*, 224 F. Supp. 3d at 168.

To the extent Mr. Jackson's Eighth Amendment claim is based on the Defendants' repeated verbal harassment of him, his claim fails. Allegations of verbal harassment that do not result in a sufficiently serious injury do not rise to the level of an Eighth Amendment violation. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (affirming a district court finding that prison guards "name calling" an incarcerated plaintiff did not amount to a constitutional violation); *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 204 (N.D.N.Y. 2015) (collecting cases stating that allegations of verbal harassment are insufficient to state an Eighth Amendment claim). The fact that the verbal harassment caused Mr. Jackson to fear his own safety is insufficient to show such an injury. *See Mercer v. Green Haven Corr. Facility*, No. 94-CIV-6238 (DLC), 1998 WL 85734, at *4 (S.D.N.Y. Feb. 27, 1998) (emotional distress caused by verbal harassment does not constitute Eighth Amendment claim).

Accordingly, any Eighth Amendment claim based on the alleged verbal harassment is **DISMISSED**.

Mr. Jackson, however, may have a plausible Eighth Amendment claim based on his allegations that Officers Moochie and Wells tampered with his meal on June 27, 2019. Mr. Jackson alleges that the officers removed his chicken patty from his meal tray and told him, "That's what you fucking get!" Compl. ¶ 19. "[T]he Eighth Amendment prohibition against cruel and unusual punishment . . . require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *George v. Conway*, No. 05-CV-510A (RJA), 2009 WL 1449046, at *14 (W.D.N.Y. May 21, 2009) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)); *see also Hannon v. Maldonado*, No. 3:15-CV-426 (JAM), 2016 WL

7635884, at *3 (D. Conn. Dec. 29, 2016) (allegations that food was served on unsanitary cart and tray was placed on floor in cell could amount to Eighth Amendment violation).

As a result, Mr. Jackson's Eighth Amendment claim, to the extent that it relates to Officers Moochie and Wells interfering with his right to being adequately fed, will survive for now, against these two officers in their individual capacities for damages.

E. **Declaratory and Injunctive Relief**

To the extent Mr. Jackson seeks declaratory or injunctive relief against Officers Moochie and Wells in their official capacities, such claims cannot proceed.

This Eighth Amendment claim, based on an isolated incident from June 27, 2019, is not alleged to be an ongoing issue. *See Inside Connect, Inc. v. Fischer*, No. 13-CV-1138 (CS), 2014 WL 2933221, at *7 (S.D.N.Y. June 30, 2017) (Eleventh Amendment bars claim for injunctive relief against state official based on past conduct that is no longer ongoing); *Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) (Eleventh Amendment bars declaration that state violated federal law in the past). Therefore, the requests for declaratory and injunctive relief are dismissed at this time.

F. **Order to Show Cause**

Finally, Mr. Jackson moves for an Order to Show Cause "why a preliminary injunction should not issue pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining the Defendants, their successors in office, agents and employees, and all other persons acting in concert and participated with them from touring by [P]laintiff['s] cell, serving [P]laintiff food at any time, [or] escorting [P]laintiff to[] and from [his] cell room." Mot. for Order to Show Cause. Mr. Jackson's proposed order also includes a temporary restraining order prohibiting the

13

Defendants "from working in the same unit where [P]laintiff is housed in order to see that [P]laintiff is not being harassed, threaten[ed], falsely accused of a[n] uncommitted crime, being that [P]laintiff is going home in less than 40 days," on December 24, 2019. *Id.*

As noted above, because the Court finds that Mr. Jackson cannot seek injunctive relief based on the allegations in his complaint, and he offers no further allegations in his motion for a temporary restraining order and order to show cause, that motion is **DENIED**.

## ORDERS

(1)    The Eighth Amendment claim against Defendant Officers Moochie and Wells for damages as a result of their alleged interference with his right to being adequately fed will proceed. All other claims are **DISMISSED**.

(2)    To the extent Mr. Jackson believes he can allege facts to cure the factual deficiencies of his remaining First, Eighth, or Fourteenth Amendment claims as explained above, he may file an Amended Complaint with additional facts by **January 10, 2020**. The Fourth and Fifth Amendment claims are **DISMISSED WITH PREJUDICE** and may not be restated in an Amended Complaint. **Failure to file an Amended Complaint by January 10, 2020 will constitute a dismissal of all claims with prejudice with the exception of the Eighth Amendment claim against Defendant Officers Moochie and Wells.**

(3)    The Clerk of Court shall verify the current work addresses for Defendant Officers Moochie and Wells with the DOC Office of Legal Affairs; mail a waiver of service of process request packet containing the Complaint, ECF No. 1, to them at the confirmed addresses by **December 20, 2020**; and shall on the status of the waiver requests on **January 10, 2020**. If either Officer Moochie or Officer Wells fails to return the waiver request, the Clerk shall make

arrangements for in-person service by the U.S. Marshals Service on him, and he shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The Clerk of Court shall mail a courtesy copy of the Complaint, ECF No. 1, and this Order to the DOC Office of Legal Affairs.

(5) Officers Moochie and Wells shall file a response to the initial Complaint, either an Answer or motion to dismiss, by **March 13, 2020**. If they choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **June 12, 2020**. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to the parties by the Court. The order can also be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

(8) All motions for summary judgment shall be filed by **July 17, 2020**.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Mr. Jackson changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Jackson must give notice of a new address even if he is incarcerated. Mr. Jackson should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

If Mr. Jackson has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the Defendants or defense counsel of his new address.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 3rd day of December 2019.

_____/S/_____
Victor A. Bolden
United States District Judge